## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDITH PHILLIPS | ) |
| 9874 SELKIE LANE | ) |
| WALDORF, MD 20601 | ) |
| | ) |
| *PLAINTIFF*, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. _____ |
| | ) |
| TRAVIS HILL, ACTING CHAIRMAN, | ) |
| FEDERAL DEPOSIT INSURANCE CORPORATION | )   JURY TRIAL DEMANDED |
| 550 17TH STREET, NW | ) |
| WASHINGTON, DC 20429 | ) |
| | ) |
| *DEFENDANT.* | ) |

## COMPLAINT

### NATURE OF THE ACTION

1.      Plaintiff Judith Phillips ("Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant Travis Hill, in his official capacity of Acting Chairman of the Federal Deposit Insurance Corporation ("FDIC" or "the Agency").

2.      This is an action for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16. Plaintiff, the only African American CG-13 Financial Analyst within the FDIC's Office of Inspector General ("OIG"), Office of Investigations, for more than two years performed data analytics duties at the CG-14 level without additional compensation or reclassification of her job. Management delayed her request for a desk audit during that time. When the audit finally was conducted in September 2023, it was infected by the interference of Plaintiff's direct supervisor who, in retaliation for Plaintiff's exercising her rights, misrepresented the content and duration of Plaintiff's data analytics work, and directly influenced the auditor not to fairly and fully examine Plaintiff's accreted duties. By

contrast, pursuant to established FDIC policy, a non-Black employee received a job reclassification when her supervisor recognized her performance of additional work and set the desk audit process into motion, resulting in a promotion.

## THE PARTIES

3.      Plaintiff Judith Phillips is an African American female and a resident of Waldorf, Maryland. She holds a CG-13 Financial Analyst position within the FDIC's OIG, Office of Investigations, responsible for the performance of financial analysis and supporting activities related to criminal investigations and other tasks of the OIG. In addition, since 2021 Plaintiff has supported the OIG's data analytics function by receiving training and performing data analytics work. Currently, Plaintiff is on an extended detail outside of the Agency where she continues to perform data analytics duties.

4.      Defendant Travis Hill is the Acting Chairman of the FDIC. The FDIC is a United States government corporation supplying deposit insurance to depositors in American commercial banks and savings banks. The FDIC was created during the Great Depression to restore trust in the American banking system. The FDIC insures deposits; examines and supervises financial institutions for safety, soundness, and consumer protection; makes large and complex financial institutions resolvable; and manages receiverships.

## JURISDICTION AND VENUE; ADMINISTRATIVE EXHAUSTION

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 2000e-16(c) and (d) (incorporating 42 U.S.C. §§ 2000e-5(F) through (K)). Plaintiff exhausted administrative remedies by filing charges of employment discrimination with the FDIC relating

to the matters in this action, and more than 180 days have elapsed since the filing of the original

charge of discrimination.

6.    Venue properly lies within this judicial district pursuant to 28 U.S.C. § 139l and

42 U.S.C. § 2000e-5(f)(3) because FDIC's headquarters is located in this district, the FDIC

conducts business in this district, some of the decisions giving rise to Plaintiff's claims were

made in this district, and Plaintiff's personnel records are held in this district.

## ADDITIONAL FACTUAL ALLEGATIONS

7.    Plaintiff is an African American female born in 1974. She is a Financial Analyst,

CG-13, in the FDIC's OIG, Office of Investigations. Her first line supervisor at the time of this

case is Kyle Mitchum, Special Agent in Charge, and her second-line supervisor is Quenton

Sallows, Deputy Assistant Inspector General.

8.    Plaintiff began her employment with FDIC in August 2010 as an Investigations

Specialist. In October 2016 she assumed her current job title and grade classification.

9.    In June 2021, Assistant Inspector General Shimon Richmond, the head of the

Office of Investigations, called to inform Plaintiff that she was being assigned a data analytics

project and that she would be trained by a senior internet technology specialist to access the

computer systems and write computer programming code. She began work on data analytics

projects and assignments at that time, and continued to receive assignments through November

2024.

10.    In March 2022, Mr. Richmond again called Plaintiff and advised her of the new

Data Analytics Initiative and Data Analytics Team being instituted by Inspector General Jay

Lerner. Mr. Richmond advised that, to support the initiative, he would direct that Plaintiff

primarily perform data analytics work. However, when this move was implemented, there was no change in her position description or classification.

11.     During the time that Plaintiff performed data analytics duties with the data analytics team, she continued with her training, both on-the-job training provided by the internet technology specialist on the team, and more formal training. Her unit provided approximately $26,000 to support her training, including 2022 and 2023 Gartner Data Analytics Summit and a 2022 General Assembly 10- week Data Analytics Boot Camp.

12.     The additional data analytics duties performed by Plaintiff were typically performed in OIG at the CG-14 grade level or higher. Plaintiff performed this work in addition to her regular CG-13 Financial Analyst duties. There was no other CG-13 Financial Analyst or CG-14 Forensic Accountant tasked with this additional specialized data analytics work. Starting in 2021, Plaintiff asked about the disparity she suffered and questioned why she should be paid less, at a lower-graded position, when she was performing additional job duties and functions above and beyond the scope of her defined position. She received no affirmative response to her inquiries.

13.     In October 2022, Plaintiff requested a desk audit of her position and the accreted data analytics duties. The Agency offered a litany of excuses as to why an audit could not be done in a timely manner, and almost another year passed before the audit was conducted in September 2023.

14.     The audit was conducted in an incomplete and unfair fashion, fueled by the discriminatory and retaliatory interference by Plaintiff's supervisor, Kyle Mitchum. Mitchum misdirected and manipulated the audit by, among other things:

--Falsely telling the auditor that Plaintiff volunteered for the data analytics work, when she clearly was directed and assigned to do the work starting with the communications from Mr. Richmond;

--Falsely telling the auditor that the work was temporary, when the duration of Plaintiff's data analytics work far exceeded the time allowed for temporary assignments under federal government standards; and

--Falsely telling the auditor that Plaintiff's data analytics assignments were completed, when Plaintiff had ongoing long-term projects and a regular pipeline of assignments, all of which were approved by Mr. Mitchum.

15.    Due to the false direction and material misstatements made by Mr. Mitchum, the additional/accreted duties were not properly evaluated or even considered as a part of Plaintiff's regular, recurring, and ongoing work. The auditor was not given the correct information or instructions to grade the position properly. As a result, the data analytics work was not considered or weighed as ongoing, additional, accreted work and the whole intended purpose of the audit request was evaded.

16.    The volume of data analytics work conducted by Plaintiff was a core part of her duties and was not a trifle. Between July 2022 and December 2023, well after Mr. Mitchum's sham audit, Plaintiff had more than a dozen *ad hoc* requests for data analytics work. The overall volume of Plaintiff's work in 2022 and 2023 was tilted heavily in favor of data analytics versus financial analysis, 70% to 30%. All of this work was acknowledged, approved, and certified by Plaintiff's superiors (Mitchum, Sallows, Richmond).

17.    The discriminatory treatment of Plaintiff stands in contrast to the treatment toward her white comparator, Amanda Villareal. In line with accepted FDIC policy and shorn of

discriminatory animus, Ms. Villareal's supervisor spotted the disparity between her posted and actual duties, on his own initiative promptly called for a desk audit, and equally as promptly adjusted her salary upwards based on the accretion of duties. The difference in treatment accentuates the wrongful treatment in Plaintiff's case.

18.    Defendant's discriminatory conduct has been intentional, deliberate, willful, and in reckless disregard of the rights of Plaintiff under Title VII.

19.    As a result of defendant's actions alleged here, Plaintiff has suffered injury, including economic damages as well as significant non-economic harm. As to economic harm, Plaintiff has lost the fruits of the salary and benefits of the CG-14 position.

20.    Defendant's actions have caused Plaintiff significant non-economic harm, triggering bouts of anxiety and depression, and inducing nightmares and sleeplessness. Plaintiff's non-economic injuries have come about not only because of the embarrassment, humiliation, and indignity associated with the failure properly to address the accretion of duties, but also because of the bizarre and scary behavior of Kyle Mitchum. For the better part of 2024, Mitchum shunned Plaintiff, avoiding professional and personal interaction with her. Mitchum's adverse effect on Plaintiff increased after the audit, when he was invited by management to participate in meeting with Plaintiff as she aired her grievances about Mitchum undermining the desk audit. Plaintiff understandably was fearful of Mitchum, and she asked the Agency to enact a safety plan for any encounter. The Agency told plaintiff that a safety plan was unnecessary, which only spiked Plaintiff's anxiety level.

## COUNT I
### (Title VII: Discrimination and Retaliation)

21.    Plaintiff repeats and realleges the allegations of the preceding paragraphs, as if fully set forth herein.

22.    Title VII of the Civil Rights Act of 1964 requires that personnel actions toward employees of the federal government be "free from any discrimination based on race…." 42 U.S.C. §2000e-16(a). "[T]he two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race…." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

23.    In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Supreme Court held that Title VII requires an employee to prove only that a challenged action caused the employee "some harm respecting an identifiable term or condition of employment." *Id.* at 354–55. An action can violate Title VII if it brings about a "'disadvantageous' change in an employment term or condition," *id.* at 354, 359 (citation omitted), even if it does not cause a "significant" injury to the employee. *Id.* at 355.

24.    Title VII also prohibits retaliation against an employee who (1) engaged in protected activity (i.e., "opposed any practice" unlawful under Title VII or "made a charge, testified, assisted, or participated" in an "investigation, proceeding, or hearing," 42 U.S.C. § 2000e-3(a)); (2) suffered a "materially adverse" action that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination,' " *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); and (3) shows a causal connection between the protected activity and adverse action, *id.* at 69-70. Such a causal connection can be established "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)).

25.     As alleged herein, Plaintiff, the only African American CG-13 Financial Analyst in the FDIC's OIG office, performed years of data analytics work assigned to her without appropriate compensation. As alleged herein, the vast majority of Plaintiff's work came to be data analytics work at the CG-14 level or above. By contrast with the inaction in Plaintiff's case, a white counterpart, at the initiative of her supervisor and in accordance with established Agency policies not available to Plaintiff, had her position and duties audited and was accordingly promoted.

26.     The Agency failed and refused to review Plaintiff's situation for well over a year, despite Plaintiff's repeated requests. When she continued to assert her rights, the discriminatory treatment persisted and the Agency, particularly Plaintiff's immediate supervisor Kyle Mitchum, retaliated against Plaintiff. Mitchum ostracized Plaintiff from workplace communication for the better part of one year. When Plaintiff's case finally was submitted for a desk audit in September 2023, Mitchum sabotaged it with his misrepresentations and misinformation to the auditor, and by dissuading the auditor from the central task of assessing Plaintiff's data analytics duties.

27.     As alleged herein, Plaintiff has suffered irreparable harm and injury from Defendant's intentional and willful discrimination and retaliation against her in violation of Title VII.

## PRAYER FOR RELIEF

Plaintiff respectfully prays that this Court grant the following relief:

a.      Enter a declaratory judgment finding that the foregoing actions of Defendant violated Title VII;

b.      Enjoin Defendant from employing Plaintiff at a job grade lower than CG-

14 for the performance of job duties the same or substantially equivalent to the

data analytics duties she has performed since 2022;

c.      Award Plaintiff back pay and benefits in the amount equal to what she

would have earned absent the discrimination and retaliation alleged herein;

d.      Award Plaintiff compensatory damages that would fully compensate

Plaintiff for the economic loss, loss of promotional potential, reputation, lost

wages, lost job benefits, physical and psychological injury, humiliation,

embarrassment, and mental and emotional distress caused by the conduct of

Defendant alleged herein;

e.      Award Plaintiff reasonable attorneys' fees and costs incurred in this

action; and

f.      Order such other relief as this Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: February 9, 2025

**JUDITH PHILLIPS**

By: /s/ Raymond C. Fay
Raymond C. Fay D.C. Bar 188649
Fay Law Group PLLC
1250 Connecticut Avenue, NW
Suite 700
Washington, D.C.  20036
(202) 263-4604 (Phone)
(202) 261-3508 (Facsimile)
rfay@faylawdc.com

*Attorneys For Plaintiff*